UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL OTTINGER,<br><br>                          Petitioner,<br><br>v.<br><br>GILLEY, Warden, et al.,<br><br>                          Respondents. | Case No.:  22cv633-JLS(MSB)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING RESPONDENTS' MOTION TO DISMISS [ECF NO. 5]** |

This Report and Recommendation is submitted to the Honorable Janis L. Sammartino, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  On May 3, 2022, Petitioner Michael Ottinger, a state prisoner proceeding pro se and in forma pauperis, filed a Petition for Writ of Habeas Corpus ("the Petition") pursuant to 28 U.S.C. § 2254, collaterally challenging his conviction of voluntary manslaughter, attempted murder, and first-degree robbery for various constitutional violations.  (ECF No. 1.)

/ / /

/ / /

1    Now pending before the Court is Respondents' July 7, 2022, Motion to Dismiss

2    Petition for Writ of Habeas Corpus ("Motion to Dismiss").  (ECF No. 5.)  Petitioner filed

3    an Opposition to Respondents' Motion to Dismiss on August 10, 2022.  (ECF No. 9.)  For

4    the reasons set forth below, the Court **RECOMMENDS** that Respondents' Motion to

5    Dismiss be **GRANTED** and that the Petition be **DISMISSED with prejudice** as untimely.

6                    **I.    BACKGROUND AND PROCEDURAL HISTORY**

7    The facts of Petitioner's underlying offense are not material to the Court's

8    evaluation of Respondents' Motion to Dismiss and as such are not recounted here.  The

9    Court describes below Petitioner's criminal conviction and state habeas corpus petitions

10   relevant to the instant Motion.

11   **A.    Petitioner's Criminal Conviction**

12   On June 25, 2015, an amended information filed by San Diego County prosecutors

13   charged Petitioner with nine crimes in Case No. SCD235808.  (See ECF No. 6, Lodg. 1 at

14   2–3.)  On June 29, 2015, Petitioner pled guilty in San Diego County Superior Court to

15   voluntary manslaughter (Cal. Penal Code § 192), attempted murder (Cal. Penal Code §§

16   187, 664), and first-degree robbery (Cal. Penal Code §§ 211, 212.5).  (See ECF No. 6,

17   Lodg. 2 at 2.)  For each count, Petitioner also admitted to the sentencing enhancements

18   of gang affiliation (Cal. Penal Code § 186.22(b)(1)) and personal use of a weapon (Cal.

19   Penal Code § 12022(b)(1)).  (Id. at 6.)  On March 18, 2016, Petitioner was sentenced to

20   thirty-three years in prison.[1]  (See ECF No. 6, Lodg. 4 at 3; Lodg. 5 at 2.)  Petitioner did

21   not appeal his guilty plea and sentence.  (See ECF No. 6, Lodg. 19 at 3.)

22

23   _____

24   [1]  The Court notes that in 2012, Petitioner pled guilty in the United States District Court for the
     Southern District of California to conspiracy to distribute methamphetamine and was sentenced to a

25   prison term of twenty-one years and ten months in Case No. 10cr5016-H.  (See ECF No. 6, Lodg. 2 at 6;
     Lodg. 17 at 2.)  The 2012 drug judgment (federal court) runs concurrently with the March 2016

26   manslaughter judgment (state court).  (Id.)  Petitioner is currently in custody in federal prison; when
     Petitioner completes his federal court sentence, he will serve the remainder of his state court sentence

27   in state prison.  (Id.)

28

22cv633-JLS(MSB)

1  **B.    Petitioner's State Habeas Petitions**

2       More than four years after the March 2016 manslaughter judgment, Petitioner

3  filed a series of state habeas corpus petitions challenging his conviction.  First, on May

4  20, 2020,[2] Petitioner filed a petition for writ of habeas corpus in San Diego County

5  Superior Court ("First State Habeas Petition") alleging ineffective assistance of trial

6  counsel, involuntary guilty plea, prosecutorial misconduct, judicial misconduct, and

7  actual innocence.[3]  (See ECF No. 6, Lodg. 13 at 4–9; Lodg. 14 at 5–27.)  On July 30, 2020,

8  the Superior Court denied the First State Habeas Petition, concluding that Petitioner did

9

10  _____

11

12  [2] Under the "mailbox rule," a pro se prisoner's state or federal habeas petition is deemed filed when
the prisoner delivers it to prison authorities for mailing to the court.  See Houston v. Lack, 487 U.S. 266,

13  276 (1988); Smith v. Duncan, 297 F.3d 809, 815 (9th Cir. 2002) (using a signed declaration of mailing to
determine the filing date of a petition); Anthony v. Cambra, 236 F.3d 568, 575 (9th Cir. 2000) (holding

14  that the mailbox rule applies to both state and federal habeas corpus petitions).  Here, it is unclear
when Petitioner turned the First State Habeas Petition over to prison authorities, as he signed it on

15  May 20, 2020, and certified service on July 2, 2020.  (See ECF No. 6, Lodg. 13 at 10–11; Lodg. 14 at 29.)
The court stamped it "filed" on July 13, 2020.  (See ECF No. 6, Lodg. 13 at 2; Lodg. 14 at 2.)  Applying

16  the mailbox rule, the Court assumes Petitioner delivered the First State Habeas Petition to prison
authorities on the earliest date he signed— May 20, 2020.  However, the Court notes that none of

17  these dates would impact the timeliness of his federal Petition.

18

19  [3]  Notably, in the instant Motion to Dismiss, Respondents reference two petitions that Petitioner filed
before his First State Habeas Petition and contend these earlier petitions concerned a separate 2002

20  drug conviction, Case No. SCD167359.  (See ECF No. 5-1 at 2–3.)  The record before the Court supports
this.  On August 2, 2002, Petitioner pled guilty to manufacturing a controlled substance in violation of

21  California Health & Safety Code § 11379.6 and was sentenced to a stipulated prison term of four years.
(See ECF No. 6, Lodg. 8 at 3.)  Fifteen years later, in August 2017, Petitioner filed a document in the San

22  Diego County Superior Court arguing, among other things, that his 2002 drug conviction should be
vacated because the trial court lacked jurisdiction to enter a conviction.  (Id. at 3–4; see also ECF No. 6,

23  Lodg. 6 at 4.)  The court construed this filing as a habeas corpus petition, which it denied on September
11, 2017.  (See ECF. No. 6, Lodg. 8 at 3–5.)  In October 2017, Petitioner filed a second document in the

24  San Diego County Superior Court referencing his 2002 drug conviction and raising similar claims to
those raised in his August 2017 petition.  (See ECF No. 6, Lodg. 9 at 9–22; Lodg. 6 at 3–15.)  The court

25  once again construed this filing as a habeas corpus petition, denying it on October 25, 2017.  (See ECF
No. 6, Lodg. 10 at 2–3.)  In October 2018, Petitioner filed a notice of appeal from the denial of his

26  October 2017 petition in the San Diego County Superior Court, which the court denied on November 8,

27  2018.  (See generally ECF No. 6, Lodgs. 11 & 12.)  Thus, the record shows that no state habeas petitions
relevant to the March 2016 manslaughter judgment were filed before May 20, 2020.

28

22cv633-JLS(MSB)

1   not set forth a prima facie statement of facts entitling him to habeas corpus relief on

2   each claim.  (See ECF No. 6, Lodg. 15 at 2, 4–11.)

3          On September 10, 2020,[4] Petitioner filed a second petition for writ of habeas

4   corpus in the California Court of Appeal ("Second State Habeas Petition"), alleging that

5   the state court lacked jurisdiction to proceed against him while he was in federal

6   custody and that his counsel was ineffective for failing to make this jurisdictional

7   objection.  (See ECF No. 6, Lodg. 16 at 10–18.)  The state appellate court denied

8   Petitioner's Second State Habeas Petition on October 5, 2020, reasoning that "federal

9   officials cooperated with state officials and voluntarily released Ottinger so he could be

10  prosecuted in state court."  (See ECF No. 6, Lodg. 17 at 3.)  Finally, on November 29,

11  2020,[5] Petitioner sought relief in the Supreme Court of California ("Third State Habeas

12  Petition"), arguing similar claims to those raised in his Second State Habeas Petition.

13  (See ECF No. 6, Lodg. 18 at 10–18.)  The California Supreme Court summarily denied the

14  Third State Habeas Petition on May 26, 2021.  (ECF No. 6, Lodg. 21.)

15  **C.   Petitioner's Federal Habeas Petition**

16         Petitioner filed the instant federal Petition in the Southern District of California on

17  May 3, 2022.[6]  (ECF No. 1.)  He alleges various constitutional challenges to his March

18  2016 conviction for involuntary manslaughter, attempted murder, and first-degree

19

20  _____

21  [4]  Applying the mailbox rule, the Court assumes Petitioner turned the Second State Habeas Petition

22  over to prison authorities when he signed it on September 10, 2020.  (ECF 6, Lodg. 16 at 7, 25, 179; see also supra note 2 (discussing application of the mailbox rule for pro se prisoners).)

23  [5]  Applying the mailbox rule, the Court assumes Petitioner turned the Third State Habeas Petition over to prison authorities when he signed it on November 29, 2020.  (ECF No. 6, Lodg. 18 at 7, 45; see also

24  supra note 2.)

25  [6]  Here, it is unclear when Petitioner turned the federal Petition over to prison authorities, as he signed the Petition on April 26, 2022, and signed an accompanying letter on April 30, 2022.  (ECF No. 1 at 11–

26  12.)  However, Petitioner did not sign the "Memorandum in Support of Habeas Corpus" until May 3, 2022, and the Court stamped the Petition "filed" on May 5, 2022.  (ECF No. 1 at 13, ECF No. 1-2 at 1,

27  21.)  Applying the mailbox rule, the Court assumes Petitioner delivered the federal Petition to prison authorities when he signed the required Memorandum— May 3, 2022.  (See supra note 2.)  However,

28  the Court notes that none of these dates would impact the timeliness of his federal Petition.

1   robbery.  (Id. at 6–8; see also ECF No. 1-2 at 3.)  Specifically, Petitioner articulates the

2   following claims:

3         GROUND ONE:  Sixth Amendment violation, in an unfair Trial Court, and
      Plea agreement, due to toggling without writ, between State & federal

4         prosecutions, as creating undue burden; ineffective counsel.

5         . . .

6
      GROUND TWO:  Fifth Amendment violation, when toggling pre-trial as no
7         Writ of Ad Prosequendum is evidenced, Pre-trial in the MCC San Diego

8         detention Center of federal custody, before being convicted in Federal
      Court, and undue burden resulted upon defense.

9         . . .

10
11        GROUND THREE: Fourth Amendment violation existed when the
      respond[e]nts seized the Petitioner Ottinger to shuttle from Federal to
12        State Custody for Court Pre-trial, without Due process.

13  (ECF No. 1 at 6–8.)

14                              **II.    DISCUSSION**

15          Respondents now move to dismiss the Petition, claiming that it is time-barred

16  under the one-year statute of limitations set forth in the Antiterrorism and Effective

17  Death Penalty Act of 1996 ("AEDPA").  (See ECF No. 5 at 1; ECF No. 5-1 at 1–2, 4–8.)

18  Specifically, Respondents allege that Petitioner "did not begin to seek state-court relief"

19  until July 2020, more than four years after his March 2016 manslaughter judgment

20  became final and well after the statute of limitations expired.  (See ECF No. 5-1 at 5–8.)

21  Respondents further contend that Petitioner is not entitled to statutory or equitable

22  tolling because his state habeas petitions were filed after the limitations period expired

23  and he failed to establish a "causal connection" between his difficulty obtaining records

24  and the untimeliness of the Petition.  (Id. at 6–8.)

25          Petitioner filed an Opposition asserting numerous arguments and legal theories,

26  only a few of which are applicable to the instant Motion.  (ECF No. 9.)  Regarding the

27  timeliness issue, Petitioner alleges he "was never out of time, and the State Court ruled

28  on [the] merits" of his petitions.  (Id. at 1.)  He further asserts Respondents had "ample

1   opportunity to raise a jurisdictional defense of statute of limitations, but did not." (<u>Id.</u>)

2   Petitioner does not specifically argue he is entitled to statutory or equitable tolling;

3   however, he argues that he was denied access to legal materials and officials interfered

4   with his access to the courts. (<u>See</u> ECF No. 9-1 at 5–10.)  In his federal Petition,

5   Petitioner also claims that he is "actually innocent" as to the March 2016 manslaughter

6   judgment. (<u>See</u> ECF No. 1 at 6.)  In support, Petitioner alleges there is eyewitness,

7   testimonial, and forensic evidence showing he was not a participant in the crime. (<u>See</u>

8   ECF No. 1-2 at 9–10.)

9   **A.   <u>Legal Standard</u>**

10          The AEDPA imposes a one-year statute of limitations on all federal habeas

11   petitions filed by persons in custody pursuant to the judgment of a state court. <u>See</u> 28

12   U.S.C. § 2244(d)(1).  The limitations period begins to run from the latest of four

13   statutory triggering events:

14          (A) The date on which the judgment became final by the conclusion of
         direct review or the expiration of the time for seeking such review; (B) the

15          date on which the impediment to filing an application created by State
         action in violation of the Constitution or laws of the United States is

16          removed, if the applicant was prevented from filing by such State action;
         (C) the date on which the constitutional right asserted was initially

17          recognized by the Supreme Court, if the right has been newly recognized by
         the Supreme Court and made retroactively applicable to cases on collateral

18          review; or (D) the date on which the factual predicate of the claim or claims
         presented could have been discovered through the exercise of due

19          diligence.

20

21

22   <u>Id.</u>

23          The AEDPA's one-year statute of limitations period is subject to both statutory

24   and equitable tolling.  First, the statutory tolling provision suspends the limitations

25   period for the "time during which a properly filed application for State post-conviction

26   or other collateral review" is pending. <u>See</u> 28 U.S.C. § 2244(d)(2).  Additionally, even

27   where a petitioner is not entitled to statutory tolling, an otherwise untimely federal

28   habeas petition may be subject to equitable tolling if "diligent pursuit of rights and

22cv633-JLS(MSB)

1   extraordinary circumstances standing in the way of a timely filing can be shown." Orthel

2   v. Yates, 795 F.3d 935, 938 (9th Cir. 2015) (internal citations omitted).  Regardless of

3   which subsection of § 2244(d)(1) applies, once a petitioner is notified that his petition is

4   subject to dismissal based on the AEDPA's one-year limitations period, he bears the

5   burden of demonstrating that the limitations period is sufficiently tolled under statutory

6   or equitable principles.  See Valdez v. Montgomery, 918 F.3d 687, 691 (9th Cir. 2019)

7   (quoting Banjo v. Ayers, 614 F.3d 964, 967 (9th Cir. 2010)).

8   **B.      Analysis of the Petition under § 2244(d)(1)**

9          Respondents move to dismiss the Petition on the grounds that it is barred by the

10   one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1).  (See ECF No. 5-1 at

11   4.)  Respondents contend Petitioner's judgment became final on May 17, 2016, and

12   that the limitations period expired one year later in May 2017; therefore, because

13   Petitioner did not file his federal Petition until 2022, Respondents argue it is untimely.

14   (Id. at 5.)  Although Petitioner does not address the statute of limitations issue directly,

15   Petitioner alleges he did not run out of time to file a federal petition.  (See ECF No. 9 at

16   1.)  Petitioner also claims, "the State had ample opportunity to raise a jurisdictional

17   defense of statute of limitations [in state court], but did not."  (Id.)

18          Ordinarily, under subparagraph (A) of 28 U.S.C. § 2244(d)(1), the AEDPA's one-

19   year statute of limitations begins running on "the date on which the judgment became

20   final by the conclusion of direct review or the expiration of the time for such review."

21   See 28 U.S.C. § 2244(d)(1)(A).  Subparagraphs (B) through (D) of 28 U.S.C. § 2244(d)(1)

22   allow for adjustments to the start of the limitations period in cases where state

23   impediments prevent a petitioner from seeking further relief, where claims rely on a

24   new constitutional right, or where the factual predicate for a claim was unknown at the

25   time the conviction became final.  See 28 U.S.C. § 2244(d)(1)(B)–(D).  Because Petitioner

26   has provided no argument or evidence that any of these conditions affected the filing of

27   his federal Petition, subparagraphs (B) through (D) are not applicable.  Accordingly,

28   under the default rule in subparagraph (A), the statute of limitations began running

22cv633-JLS(MSB)

1    when Petitioner's judgment became final.  <u>See</u> 28 U.S.C. § 2244(d)(1)(A).  The United

2    States Supreme Court has held that if a petitioner "does not seek review in a State's

3    highest court, the judgment becomes 'final' . . . when the time for seeking such review

4    expires."  <u>Gonzalez v. Thaler</u>, 565 U.S. 134, 154 (2012).  Petitioner then has one year

5    from the date the conviction becomes final to file a petition for writ of habeas corpus in

6    federal court.  <u>See</u> 28 U.S.C. § 2244(d)(1)(A).

7       Here, Petitioner did not appeal his March 18, 2016, judgment to the California

8    Court of Appeal.  (<u>See</u> ECF No. 6, Lodg. 19 at 3.)  Thus, his judgment became final sixty

9    days later on May 17, 2016, when the time for seeking review from California's highest

10    court expired.  <u>See</u> <u>Gonzalez</u>, 565 U.S. at 150 (noting that for petitioners who are not

11    pursuing direct review all the way to the United States Supreme Court, the judgment

12    becomes final "when the time for pursuing direct review in [the United States Supreme]

13    Court, or in state court, expires"); Cal. R. Ct. 8.308(a) (providing that a notice of appeal

14    must be filed within sixty days after the issuance of the judgment or order being

15    appealed).  Petitioner's statute of limitations for filing a habeas corpus petition in

16    federal court began to run the day after judgment became final on May 18, 2016.  <u>See</u>

17    <u>Patterson v. Stewart</u>, 251 F.3d 1243, 1246 (9th Cir. 2001) (noting the limitations period

18    begins to run the day after a judgment becomes final); <u>see also</u> 28 U.S.C.

19    § 2244(d)(1)(A).  Accordingly, Petitioner had 365 days from the finality of judgment—

20    until May 18, 2017—to file a federal habeas petition.  Petitioner, however, filed the

21    instant Petition on May 3, 2022, which was 1,812 days or 4 years, 11 months, and 16

22    days after the expiration of the one-year statute of limitations.  (ECF No. 1.)  Because

23    Petitioner did not file his federal Petition within the limitations period, it is untimely

24    absent statutory or equitable tolling.

25 **C.**    **Statutory Tolling**

26       Respondents argue that Petitioner is not entitled to statutory tolling because

27    Petitioner did not begin seeking collateral state court relief on the March 2016

28    manslaughter judgment until after the statute of limitations ran out.  (<u>See</u> ECF No. 5-1 at

6.)  Respondents contend that Petitioner's first two state court petitions [ECF No. 6, Lodgs. 6 & 9] concerned an "unrelated and already served judgment from 2002" and therefore were not "properly filed."  (<u>Id.</u>)  Thus, Respondents argue those filings did not seek "collateral review with respect to the pertinent judgment or claim," under § 2244(d)(2).  (<u>Id.</u>)  Even assuming Petitioner's first two state court petitions properly challenged the March 2016 manslaughter judgment, Respondents note they were both denied as untimely under state law and thus were not "properly filed."  (<u>Id.</u> at 6–7.)

In his Opposition, Petitioner does not specifically argue that he is entitled to statutory tolling.  (ECF No. 9.)  However, Petitioner contends that he "was never out of time, and the State Court ruled on [the] merits."  (<u>Id.</u>)  Additionally, Petitioner alleges that "the State had ample opportunity to raise a jurisdictional defense of statute of limitations, but did not."  (<u>Id.</u>)  He argues that the "Attorney General only now years later raises this matter."  (<u>Id.</u> at 2.)  Finally, Petitioner contends "[t]he record is absolutely silent on any such issue of timeliness, now raised for the first time by respondent."  (<u>Id.</u> at 10.)

The AEDPA's statutory tolling provision suspends the one-year statute of limitations period while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" in state court.  <u>See</u> 28 U.S.C. § 2244(d)(2).  Additionally, the intervals between the disposition of one state petition and the filing of a further petition may be tolled.  <u>See</u> <u>Carey v. Saffold</u>, 536 U.S. 214, 223 (2002) (holding that "pending" includes the time between a lower court's decision and the filing of a new petition).  The AEDPA's statute of limitations is not tolled, however, from the end of a state's collateral review until the filing of a federal habeas petition.  <u>See</u> <u>Roy v. Lampert</u>, 465 F.3d 964, 968 (9th Cir. 2006).  Finally, a state habeas petition filed after the AEDPA's one-year statute of limitations has expired cannot revive the federal limitations period.  <u>See</u> <u>Ferguson v. Palmateer</u>, 321 F.3d 820, 823 (9th Cir. 2003) (concluding that once the federal statute of limitations has run, petitioners cannot revive their chances at federal relief by filing a state petition).  The

1    United States Supreme Court has held that when a state petition is rejected as untimely,

2    " 'that [is] the end of the matter' for purposes of § 2244(d)(2).' " Allen v. Siebert, 552

3    U.S. 3, 7 (2007) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005).

4         Here, Petitioner filed two state court petitions in August 2017 and October 2017

5    seeking relief from an unrelated 2002 drug conviction and judgment.  (See ECF No. 6,

6    Lodgs. 6 & 9.)  These filings did not seek "collateral review with respect to the pertinent

7    judgment" as required by § 2244(d)(2), and therefore do not have a tolling effect on his

8    federal Petition.  Even if these filings challenged the pertinent judgment, they were not

9    "properly filed" because they were rejected as untimely under state law.  (See ECF No.

10   6., Lodg. 8 at 4; Lodg. 10 at 4.) See also Allen, 552 U.S. at 7 (concluding state petition

11   was not "properly filed" under the AEDPA because state court rejected it on timeliness

12   grounds).  Furthermore, these petitions were both filed after the one-year statute of

13   limitations expired on May 18, 2017, so they cannot restart the federal limitations

14   period.  See Ferguson, 321 F.3d at 823 ("section 2244(d) does not permit the reinitiation

15   of the limitations period that has ended before the state petition was filed").

16        With respect to the relevant March 2016 manslaughter judgment, Petitioner filed

17   his First State Habeas Petition on May 20, 2020, his Second State Habeas Petition on

18   September 10, 2020, and his Third State Habeas Petition on November 29, 2020.  (See

19   ECF No. 6, Lodgs. 13, 16, 18.)  All three state petitions were filed more than three years

20   after the one-year statute of limitations period expired on May 18, 2017.  (See supra

21   Section II.B (discussing when the one-year limitations period expired).  Consequently,

22   the state petitions cannot operate to statutorily toll the statute of limitations.[7]

23

24   _____

25   [7] Even if the Court were to factor in all three state habeas petitions, Petitioner would only receive an
     additional 376 days of statutory tolling after the end of the AEDPA statute of limitations period.
26   Petitioner filed his First State Habeas Petition on May 20, 2020, and the Superior Court denied it
     seventy-two days later on July 30, 2020 [ECF No. 6, Lodgs. 13 & 15]; Petitioner filed his Second State
27   Habeas Petition on September 10, 2020, and the California Court of Appeal denied it twenty-six days
     later on October 5, 2020 [Lodgs. 16 & 17]; finally, Petitioner filed his Third State Habeas Petition on
28   November 29, 2020, and the California Supreme Court denied it 179 days later on May 26, 2021

10

22cv633-JLS(MSB)

1    Ferguson, 321 F.3d at 823; Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001) (a state

2    habeas petition filed after the AEDPA statute of limitations expires results in an

3    "absolute time bar").  The federal Petition is time-barred unless Petitioner can establish

4    that he is entitled to equitable tolling.

5    **D.    Equitable Tolling**

6          Even though Petitioner is not entitled to statutory tolling, the Petition may survive

7    this Motion to Dismiss if Petitioner is entitled to equitable tolling.  Respondents argue

8    that Petitioner has not met his burden to establish equitable tolling.  (See ECF No. 5-1 at

9    7–8.)  Respondents assert that Petitioner does not explain when he first started seeking

10   records concerning the March 2016 manslaughter judgment, nor does he explain when

11   the records arrived.  (Id. at 7.)  Further, Respondents contend that Petitioner waited

12   eleven months after he received his records and after the state courts denied him relief

13   on the merits to file his federal Petition, which does not establish grounds entitling him

14   to equitable tolling.  (Id.)

15         Petitioner has made no argument that equitable tolling applies.  (See generally

16   ECF No. 1; ECF No. 9.)  However, courts are directed to be more lenient when

17   interpreting the pleadings of pro se litigants like Petitioner.  See Haines v. Kerner, 404

18   U.S. 519, 520 (1972) (the pleadings of pro se litigants are held to "less stringent

19   standards than formal pleadings drafted by lawyers"); see also Allen v. Calderon, 408

20   F.3d 1150, 1153 (9th Cir. 2005) ("[T]he district court must construe pro se habeas filings

21   liberally"); Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003) ("Courts

22   have a duty to construe pro se pleadings liberally, including pro se motions as well as

23   complaints.").  Having reviewed Petitioner's pleadings carefully, the Court now

24

25   _____

26   [Lodgs. 18 & 21]. With respect to interval tolling, there was a forty-three-day interval between
     Petitioner's First Petition denial and his filing of the Second Petition [Lodgs. 15 & 16] and a fifty-six-day
27   interval between Petitioner's Second Petition denial and his filing of the Third Petition [Lodgs. 17 & 18].
     Because the Petition was untimely by 4 years, 11 months, and 16 days, tolling the statute of limitations
28   for 376 days would not help Petitioner.

22cv633-JLS(MSB)

1   addresses Petitioner's allegations that could be construed as arguments in support of

2   equitable tolling.  (See ECF No. 9-1 at 3–4.)

3          Specifically, Petitioner contends that:  (1) during his incarceration at Atwater

4   Federal Penitentiary, the prison was on security diversion lockdown between October 6,

5   2010, to October 6, 2018; (2) Petitioner was separated from his property during his

6   placement in the Atwater Special Housing Unit ("SHU") and following his transfer to

7   United States Penitentiary ("USP") McCreary between February 10, 2018, to March

8   2018; (3) USP McCreary had numerous emergency security lockdowns between March

9   1, 2018, and August 2019; (4) Petitioner's property was delayed in transit and delivery

10  for an "inordinate amount of time, impeding access"; (5) USP McCreary officials rejected

11  Petitioner's mail, including legal cases and documents, between January 2019 to August

12  2019, claiming that Petitioner was no longer a resident of the prison; and (6) USP

13  McCreary officials ran the law library outside of normal federal system operations,

14  making it "almost impossible" to research legal cases.  (Id.)

15         A habeas petitioner may be entitled to equitable tolling if he can establish the

16  following elements: (1) "he has been pursuing his rights diligently," and (2) "some

17  extraordinary circumstance stood in his way."  Holland v. Florida, 560 U.S. 631, 649

18  (2010) (citing Pace, 544 U.S. at 418); see also Lawrence v. Florida, 549 U.S. 327, 336

19  (2007).  The failure to file a timely petition must be the result of external forces, not the

20  result of the petitioner's lack of diligence.  See Miles v. Prunty, 187 F.3d 1104, 1107 (9th

21  Cir. 1999) (discussing how circumstances must be beyond a prisoner's control to qualify

22  as "extraordinary").  The threshold to trigger equitable tolling is high, and therefore is

23  not available in most cases.  See Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010)

24  (quoting Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)).

25         Here, Petitioner fails to carry his burden of showing diligence in pursuing his legal

26  interests in the more than six years between his conviction (March 18, 2016) and the

27  date he filed his federal Petition (May 3, 2022).  Nor does he demonstrate extraordinary

28  circumstances that prevented him from timely filing his Petition before the AEDPA's

1    one-year statute of limitations expired.  The only allegation relevant to Petitioner's

2    equitable tolling argument is the Atwater security lockdown from October 6, 2010, to

3    October 6, 2018, as the other alleged events occurred after the statute of limitations

4    period elapsed on May 18, 2017.  (See ECF No. 9-1 at 3–4.; see also supra Section II.B).

5    Petitioner has not made any specific allegations or presented evidence regarding how

6    the alleged lockdown from 2010 to 2018 prevented him from filing his petition on time.

7    See United States v. Van Poyck, 980 F. Supp. 1108, 1111 (C.D. Cal. 1997) (concluding

8    brief prison lockdowns did not qualify as "extraordinary circumstances" because

9    Petitioner did not demonstrate how they made it impossible to timely file his petition);

10   Higgins v. Garcia, 32 F. App'x 974 (9th Cir. 2002) (finding no extraordinary circumstances

11   when Petitioner's legal materials were not available to him for a limited period and he

12   had "occasional" difficulty accessing prison library due to lockdowns, but Petitioner did

13   not explain why these instances prevented him from timely filing).

14        Additionally, Petitioner does not specify how long he was without access to his

15   legal materials, when he gained access to his materials, or whether he requested his

16   materials during that time.  See Lott v. Mueller, 304 F.3d 918, 925 (9th Cir. 2002)

17   (quoting Vigliotto v. Terry, 873 F.2d 1201, 1202–03 (9th Cir. 1989)) ("[T]emporary

18   deprivation of an inmate's legal materials does not, in all cases, rise to a constitutional

19   deprivation."); Hartley v. Hall, 335 F. App'x 686, 687 (9th Cir. 2009) ("[T]here must be a

20   causal link between lateness and the extraordinary circumstances.").  Further, the

21   record before the Court shows that Petitioner actively pursued two state habeas

22   petitions in 2017 and appealed the denial of the second such petition in 2018.[8]  (See ECF

23   No. 6, Lodgs. 6, 9, 11.)  Petitioner's filings between 2017 and 2018 demonstrate that he

24   had access to legal materials during the alleged security lockdown.  Therefore, it does

25   not appear there was any extraordinary impediment to Petitioner's ability to timely

26

27

28   _____
     [8] As previously stated, Petitioner filed two petitions concerning an unrelated 2002 drug before filing his
     First State Habeas Petition concerning the March 2016 manslaughter conviction.  (See supra note 3.)

pursue his claims on the March 2016 manslaughter judgment.  See Flowers v. Palmer, 594 F. App'x 345, 346 (9th Cir. 2014) (holding no extraordinary circumstances where Petitioner was able to file "numerous state pleadings and one federal petition" during alleged restriction on access to legal materials); Brown v. Montgomery, No. 19-CV-2021-CAB(WVG), 2020 WL 4697979, at *4 (S.D. Cal. Aug. 13, 2020) (holding that there were no external forces preventing Petitioner from timely filing because he actively pursued other state and federal actions before filing his federal habeas petition), adopted by 2020 WL 6825586 (S.D. Cal. Nov. 19, 2020); Estrada v. Chrones, No. CV 06-5278-JSL(FFM), 2011 WL 4940716, at *6 (C.D. Cal. Aug. 22, 2011) (holding lack of access to a law library and legal materials due to prison transfers did not render timely filing impossible), adopted by 2011 WL 4914708 (C.D. Cal. Oct. 17, 2011).  Thus, Petitioner falls short of showing the "extraordinary circumstances" necessary to support equitable tolling of his otherwise untimely Petition.

### 1.  Actual Innocence Gateway

In rare circumstances, a plea of actual innocence can overcome the AEDPA's one-year statute of limitations.  Petitioner raises "actual innocence" as a ground for relief in his federal Petition.  (See ECF No. 1 at 6.)  Specifically, Petitioner claims, "[t]here existed an 'ACTUAL INNOCENCE' defense, to the Voluntary Manslaughter" conviction because his attorney failed to adequately investigate, and Petitioner was not fully informed of the facts due to his "shuttling or toggling" between state and federal prison.  (ECF No. 1 at 6.)  Petitioner further alleges:

> [H]e was innocent of each charge brought against him, as he was not a member of the Hell's Angels [sic] Motorcycle Organization at the time of the offenses alleged, because he was never present during the murder or attempted murders claimed by the State as movant shows Mr. Ottinger was at home, nor is there fingerprints, ('DNA') or eyewitness evidences available to substantiate his involvement . . . and no weapons have been discovered within Mr. Ottinger's possession or dwelling related to these crimes.

(ECF No. 1-2 at 9–10.)

1    Petitioner also claims that an eyewitness testified at a preliminary hearing that

2    "ONLY ONE GUY USED A WEAPON ON THIS VICTIM [sic]," and an individual resembling

3    Petitioner had a weapon and pushed the victim down. (Id. at 10.)  Further, Petitioner

4    alleges that his co-defendant admitted to stabbing the victim.  (Id.)  Based on this

5    information, Petitioner argues he would not have entered a guilty plea if his counsel had

6    properly investigated the case.  (Id.)  Respondents do not acknowledge Petitioner's

7    actual-innocence claim in their Motion to Dismiss.  (See ECF No. 5.)

8    The United States Supreme Court has held that the "actual innocence gateway"

9    may overcome the AEDPA's limitations period.  See McQuiggin v. Perkins, 569 U.S. 383,

10   386; see also Lee v. Lampert, 653 F.3d 929, 932 (9th Cir. 2011) (holding that a "credible

11   claim of actual innocence constitutes an equitable exception to AEDPA's limitations

12   period".)  In Schlup, the Court limited the exception to habeas petitioners who can show

13   "it is more likely than not that no reasonable juror would have convicted [petitioner] in

14   the light of the new evidence."  Schlup v. Delo, 513 U.S. 298, 327 (1995).  A petitioner

15   must support his constitutional claims "with new reliable evidence—whether it be

16   exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

17   evidence—that was not presented at trial."  Id. at 324; see also Larsen v. Soto, 742 F.3d

18   1083, 1096 (9th Cir. 2013) (holding that evidence that is cumulative and speculative is

19   not sufficient to show actual innocence).  This demanding standard "permits review only

20   in the 'extraordinary' case," but it does not require absolute certainty about the

21   petitioner's innocence."  House v. Bell, 547 U.S. 518, 538 (2006) (quoting Schlup, 513

22   U.S. at 327) (emphasizing that claims of actual innocence are rarely successful).

23   Here, Petitioner has not presented any new, reliable evidence that suggests he is

24   actually innocent of the crimes to which he pleaded guilty.  The San Diego Superior

25   Court rejected Petitioner's actual innocence claim in their denial of his First State

26   Habeas Petition.  (See ECF No. 6, Lodg. 15 at 10.)  The court explained that Petitioner did

27   not provide "any factual assertions or evidence to support his claim" of actual

28   innocence, and Petitioner did not "explain why (if he is factually innocent) he pled

1    guilty." (Id.)  Like in the state court action, the instant Petition does not raise any "new

2    reliable evidence" that meets the high Schlup standard.  Petitioner merely makes vague

3    allegations that he was at home during the crimes, there was no evidence of his DNA at

4    the crime scene, and an eyewitness saw one armed individual with the victim.  (See ECF

5    No. 1-2 at 9–10.) See also Larsen, 742 F.3d at 1096 (denying actual innocence gateway

6    when a petitioner's evidence is purely speculative).  This information is not new because

7    it was available prior to the date Petitioner's conviction became final.  Thus, the

8    evidence Petitioner raises is not sufficient to show that more likely than not, a

9    reasonable juror would find he is not guilty.  See Schlup, 513 U.S. at 327.

10          In addition, Petitioner freely and voluntarily admitted to the charges and

11   allegations in his guilty plea. (See ECF No. 6, Lodg. 2.).  Although Petitioner now claims

12   he would not have pleaded guilty if his attorney properly investigated the case, there is

13   no evidence to suggest his attorney acted improperly.  See United States v. Ross, 511

14   F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea

15   hearing carry a strong presumption of veracity in subsequent proceedings attacking the

16   plea."); McArdle v. Sniff, Case No. EDCV08-522 PSG(JC), 2009 WL 1097324, at *5 (C.D.

17   Cal., Apr. 20, 2009) (holding a Petitioner's statements "contrary to his sworn

18   representations to the state court during the entry of his guilty pleas" did not constitute

19   "new reliable evidence").  In conclusion, Petitioner is not entitled to any exceptions to

20   the one-year statute of limitations.

### III.    CONCLUSION

22          For the foregoing reasons, the Court **RECOMMENDS** that the district court issue

23   an order (1) **GRANTING** Respondents' Motion to Dismiss and (2) **DISMISSING** the

24   Petition **with prejudice** as untimely.

25          **IT IS ORDERED** that no later than **January 2, 2023**, any party to this action may file

26   written objections with the Court and serve a copy on all parties.  The document should

27   be captioned "Objections to Report and Recommendation."

28

22cv633-JLS(MSB)

  
1   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the

2   Court and served on all parties no later than **January 16, 2023**.  The parties are advised

3   that failure to file objections within the specified time may waive the right to raise those

4   objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th

5   Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

6   **IT IS SO ORDERED.**

7   Dated:  **December 1, 2022**

8

9   Honorable Michael S. Berg
    United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22cv633-JLS(MSB)