UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL OTTINGER,<br><br>                        Petitioner,<br><br>v.<br><br>GILLEY, Warden; and ROB BONTA, Attorney General, State of California,<br><br>                        Respondents. | Case No.: 22-CV-633 JLS (MSB)<br><br>**ORDER: (1) OVERRULING PETITIONER'S OBJECTIONS TO REPORT AND RECOMMENDATION,<br>(2) ADOPTING REPORT AND RECOMMENDATION,<br>(3) GRANTING RESPONDENTS' MOTION TO DISMISS WITH PREJUDICE, AND (4) DENYING CERTIFICATE OF APPEALABILITY**<br><br>(ECF Nos. 5, 10 & 11) |

Presently before the Court is Respondents Warden Gilley and Rob Bonta, Attorney General of the State of California's (collectively, "Respondents") Motion to Dismiss Petition for Writ of Habeas Corpus ("Mot.," ECF No. 5), as well as Petitioner Michael Ottinger's ("Petitioner" or "Ottinger") Opposition thereto ("Opp'n," ECF No. 9). Also before the Court is Magistrate Judge Michael S. Berg's Report and Recommendation ("R&R," ECF No. 10) advising the Court to grant Respondents' Motion, as well as Petitioner's Objections to the R&R ("Objs.," ECF No. 11). Having carefully considered

the Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 ("Pet.," ECF No. 1), the Notice of Lodgment ("NOL," ECF No. 6), Judge Berg's R&R, the Parties' arguments, and the law, the Court **OVERRULES** Petitioner's Objections, **ADOPTS** the R&R, **GRANTS** Respondents' Motion **WITH PREJUDICE**, and **DENIES** a certificate of appealability.

## BACKGROUND

Judge Berg's R&R contains a thorough and accurate recitation of the relevant facts and procedural history, to which Petitioner does not object. *See* R&R at 2–5; *see generally* Objs. Accordingly, this Order incorporates by reference the background as set forth in the R&R.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties in connection with a magistrate judge's R&R. The district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). However, in the absence of timely objection, the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note to 1983 addition (citing *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974)).

## ANALYSIS

Petitioner's Petition asserts three grounds for relief: (1) a Sixth Amendment violation, (2) a Fifth Amendment violation, and (3) a Fourth Amendment violation. *See* Pet. at 6–8; *see also* ECF No. 1-2 ("Mem.") at 4; 10–21. Respondents move to dismiss on the basis that the Petition is untimely under the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). *See generally* Mot.

The R&R recommends that this Court grant Respondents' Motion and dismiss the Petition with prejudice. *See* R&R at 2. The R&R finds that Petitioner's March 18, 2016 judgment became final sixty days later, on May 17, 2016, because Petitioner did not file a direct appeal to the California Court of Appeal. *See id.* at 8. The AEDPA statute of limitations began running the following day and expired on May 18, 2017. *See id.* As the Petition was not filed until May 3, 2022, or nearly five years after the statute of limitations had run, the Petition is untimely absent tolling. *See id.*

The R&R further concludes that Petitioner is not entitled to statutory tolling because Petitioner failed to file any state habeas petition seeking collateral review of the March 18, 2016 judgment until May 20, 2020, more than three years after the expiration of the AEDPA statute of limitations. *See id.* at 10 (citing NOL, Lodgs. 13, 16 & 18). The R&R also determines that Petitioner is not entitled to equitable tolling, as Petitioner fails to carry his burden of showing diligence in pursuing his legal interests in the more than six years between the date of the judgment and the filing of his Petition. *See id.* at 12. Petitioner also does not demonstrate extraordinary circumstances preventing the timely filing of his Petition; although Petitioner references a prison lockdown that lasted until October 6, 2018, he fails to specify how long he was without access to any legal materials, whether he requested his materials during that time, and when he received them. *See id.* at 12–13 (citations omitted). Moreover, Petitioner pursued two state habeas petitions and an appeal of the denial of one of those petitions during that timeframe, demonstrating he had access to legal materials during the lockdown. *See id.* at 13. Finally, the R&R determines that Petitioner's alleged actual innocence does not overcome the AEDPA statute of limitations, as Petitioner fails to present new, reliable evidence of actual innocence. *See id.* at 16. Moreover, Petitioner pleaded guilty, and he fails to present evidence that his attorney acted improperly. *See id.*

Petitioner timely objected to the R&R. *See generally* Objs. Petitioner's Objections are not a model of clarity, at times venturing into issues irrelevant to the matters at hand, such as whether the AEDPA statute of limitations is jurisdictional. *See, e.g.*, Objs. at 3.

Below, the Court attempts to construe Petitioner's *pro se* arguments as liberally as possible, reviewing *de novo* those portions of the R&R to which Petitioner objects and reviewing for clear error the remainder of the R&R.

## I. Petitioner's Objections

### A. *Timeliness of the Petition*

Petitioner primarily argues that the R&R errs in finding his Petition untimely. Petitioner claims that "Ottinger meets the 1 Year deadline AEDPA sets by filing within 11 Months of being denied in California Court." Objs. at 1; *see also id.* at 5 ("Ottinger . . . fully showed cause to proceed in State Courts and conformed to the 1 Year AEDPA deadline thereafter in this Court now."). However, the Court finds that Petitioner's argument stems from a fundamental misunderstanding of how the AEDPA statute of limitations operates. The one-year limitations period does not run from the conclusion of the state court's collateral review of the petitioner's judgment; rather, it

> run[s] from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

/ / /
/ / /
/ / /

> (D) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  However, the time is statutorily tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

Here, under subdivision (A), Petitioner's judgment became final the day after the sixty-day deadline for seeking direct review of his March 18, 2016 judgment expired. *See, e.g.*, *Vosgien v. Persson*, 742 F.3d 1131, 1134 (9th Cir. 2014) (noting, where the petitioner did not file a direct appeal and only collaterally attacked his convictions in state court two years after they became final, that the subsequently filed § 2254 petition was untimely under AEDPA).  Although Petitioner claims to have been "impeded" by the state court's sealing of transcripts in the underlying case, he makes no argument that this alleged act rose to the level of an unconstitutional action undertaken by the State such that subdivision (B) would apply; indeed, other district courts within the Ninth Circuit have rejected such claims. *See, e.g.*, *Kartiganer v. Henderson*, No. CV 07-7575 JVS FFM, 2011 WL 3293389, at *3 (C.D. Cal. June 27, 2011) ("Even if the state court acted improperly, however, plaintiff has failed to demonstrate that such action constituted a state impediment. Petitioner contends that he still has not received a copy of the transcript, yet he managed, belatedly, to file the Petition herein.  Petitioner has not explained how the state's alleged action prevented him from filing the Petition sooner."), *report and recommendation adopted*, No. CV 07-7575 JVS FFM, 2011 WL 3290361 (C.D. Cal. July 29, 2011). Petitioner does not argue, nor does it appear to this Court, that the rights at issue are newly recognized by the Supreme Court or that the factual predicates for the Petition's claims were only recently discoverable; accordingly, subsections (C) and (D) likewise are inapplicable.  Finally, because Petitioner's state court habeas petitions were not filed until after the one-year statute of limitations had lapsed, those petitions can "neither toll[] nor revive[] the expired limitations period" pursuant to the statutory tolling provision. *Earls*

*v. Hernandez*, 403 F. Supp. 2d 985, 988 (C.D. Cal. 2005) (citing *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Green v. White*, 223 F.3d 1001, 1003 (9th Cir. 2000)).

In light of the foregoing, the Court concludes that the Petition was untimely absent a basis for equitable tolling and **OVERRULES** Petitioner's objections to the contrary.

### B.   *Equitable Tolling*

Petitioner next argues that the limitations period should be equitably tolled. First, he implies that his ignorance of the law may be a basis for equitable tolling, as "apparently there are two-time bar limitations, one is State, and one is Federal. When filing the Petitioner did not know this." Objs. at 4. However, ignorance of the law alone is not a basis for equitable tolling of the AEDPA limitations period. *See Ford v. Pliler*, 590 F.3d 782, 789 (9th Cir. 2009) ("[E]quitable tolling requires a petitioner to show that some 'extraordinary circumstance[] beyond [his] control' caused his late petition . . . , and this standard has never been satisfied by a petitioner's confusion or ignorance of the law alone.") (citations omitted); *accord Faught v. Butler*, 135 F. App'x 92, 93 (9th Cir. 2005) (citation omitted); *Sperling v. White*, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (citations omitted).

Second, Petitioner contends that "the same equitable tolling that permitted Ottinger to proceed in State Court should apply in the US District Court." Objs. at 4. He argues that, "[u]nder a de novo review standard, if factual findings of the State Court are not unreasonable, the US Court must apply a presumption of correctness found in 2254(e)(1) to any facts found by the State Court; including equitable tolling." *Id.* at 7 (emphasis and citations omitted). First, whether a statute of limitations should be equitably tolled "is a mixed question of law and fact" not entitled to the presumption of correctness. *Chand v. Lynch*, 608 F. App'x 475, 476 (9th Cir. 2015) (citing *Ghahremani v. Gonzales*, 498 F.3d 993, 998–99 (9th Cir. 2007)). Even were the issue of equitable tolling a strictly factual determination entitled to the presumption of correctness, however, the issue of whether Petitioner's state habeas petitions were timely does not appear to have been addressed by the state courts, and, at any rate, is irrelevant to whether the instant Petition was timely

filed pursuant to AEDPA, a federal statute that governs federal habeas actions such as this one.  Even assuming the state courts had determined that Petitioner was diligent in filing his state habeas petitions, the fact remains that Petitioner waited an additional eleven months between the conclusion of the state courts' collateral review of his state habeas petitions and the filing of the instant Petition.  The state courts clearly made no factual findings concerning the degree to which Petitioner was entitled to tolling for this period.  Accordingly, any finding by the state courts that Petitioner was entitled to equitable tolling is not binding on this Court.

Third, Petitioner provides a laundry list of reasons why the AEDPA limitations period should be tolled, including: (1) his lack of access to knowledge while in prison as to how to file a federal writ; (2) his "myriad of transfers lockdowns and property for legal activity [being] withheld for extended periods"; (3) the return of his outside mail from Legal Advocate 360* as undeliverable; (4) his counsel's failure/refusal to send his case file; (5) the sealing of the case file by the state court; (6) the refusal of the state court clerks of court to send requested court transcripts to Petitioner or Legal Advocate 360*; (7) the lack of a writ in U.S.P. McCreary's records to take Petitioner out of custody; (8) three different lawyers' purported failure to subpoena Petitioner's codefendant after the codefendant pleaded guilty to the killing; and (9) an eyewitness's evidence of Petitioner's innocence.  Objs. at 4.  Petitioner fails, however, to provide sufficient factual details to show how these events impeded him and how he nonetheless acted with due diligence over a period of nearly six years; nor does Petitioner provide any causal nexus between these events purportedly beyond his control and the late filing of his Petition.  For example, Petitioner raised his claims in his state habeas petitions prior to receiving his case file from his lawyer.  *See, e.g.*, NOL, Lodg. 20 at 15 (December 2020 e-mail chain between Petitioner and his counsel evidencing that Petitioner had not received his case file).  Accordingly, it does not appear that his case file was necessary nor that its absence impeded the filing of his Petition.  Nor does Petitioner explain why he could not have filed a basic form petition and later sought to amend said petition with more detail once he obtained his

legal file from his counsel and transcripts and other records from the state courts. *See, e.g.*, *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1014 (9th Cir. 2009) (finding petitioner was not diligent and was not entitled to equitable tolling where he did not identify specific instances where he needed particular documents to file a timely petition and did not file and later amend a basic form petition prior to the expiration of the AEDPA limitations period). In short, on the basis of the circumstances presently before this Court, it does not appear that Petitioner acted with sufficient diligence to warrant equitable tolling.

Accordingly, the Court concludes that Petitioner is not entitled to equitable tolling and **OVERRULES** Petitioner's objections to the contrary.

### C.   *Actual Innocence*

Finally, Petitioner argues that he is entitled to bring his Petition under the "actual innocence" gateway, arguing that "Ottinger shows [proof that a constitutional violation has resulted in the conviction of an innocent person] as another has admitted to the crime and been convicted. A witness Ms. Hernandez testified at the preliminary (sealed transcript) hearing that Ottinger did not do it." Objs. at 7. He claims this evidence is "not merely speculative, collateral, cumulative, or 'insufficient to overcome otherwise convincing proof of guilt.'" *Id.* (citing *Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013)).

As an initial matter, "it is unclear 'whether the *Schlup* actual innocence gateway always applies to petitioners who plead guilty,'" as Petitioner did. *Torres v. Diaz*, No. 19-CV-01964-LAB-JLB, 2020 WL 7869488, at *21 n.12 (S.D. Cal. Dec. 31, 2020) (quoting *Smith v. Baldwin*, 510 F.3d 1127, 1140 n.9 (9th Cir. 2007)), *report and recommendation adopted in relevant part*, No. 19CV1964 LAB (JLB), 2021 WL 807689 (S.D. Cal. Mar. 3, 2021). "Decisions in which the Supreme Court or Ninth Circuit has considered claims of actual innocence in a plea context involved subsequent case law that arguably rendered the petitioner's acts non-criminal." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 621–23 (1998); *Vosgien v. Persson*, 742 F.3d 1131, 1134–35 (9th Cir. 2013); *United States v. Avery*, 719 F.3d 1080, 1084–85 (9th Cir. 2013)). "However, in 2016, the Ninth Circuit noted in an unpublished opinion that 'a guilty plea does not foreclose the possibility of

accessing the *Schlup* gateway.'" *Id.* (citing *Corzine v. Baker*, 646 F. App'x 520, 520 n.2 (9th Cir. 2016)).

Even assuming the actual innocence gateway is open to Petitioner, however, Petitioner fails to adequately show actual innocence. "To show actual innocence, the petitioner must meet the threshold requirement set forth in *Schlup v. Delo*, 513 U.S. 298 (1995)," which "requires a petitioner to 'support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Joiner v. Sutton*, No. 16CV2841 GPC (BGS), 2018 WL 692272, at *9 (S.D. Cal. Feb. 1, 2018) (quoting *Schlup*, 513 U.S. at 324), *report and recommendation adopted*, No. 316CV02841GPCBGS, 2018 WL 1470249 (S.D. Cal. Mar. 26, 2018). "Further, a petitioner must 'persuade[ ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at *10 (citations omitted). "Precedent holding that a petitioner has satisfied the *Schlup* standard has 'typically involved dramatic new evidence of innocence', such as DNA evidence or a prosecution's chief witness's subsequent open court confession that he was the perpetrator of the murder for which the petitioner had been convicted." *Id.* (citing *Larsen*, 742 F.3d at 1096).

Here, Petitioner does not bring forward new and reliable evidence that undermines his guilt. Petitioner relies on the supposed testimony of an eyewitness at the preliminary hearing that Petitioner did not commit the crime in question. *See, e.g.*, Objs. at 7. However, this evidence is wholly speculative. In fact, Petitioner's Objections explicitly state that "[t]he Superior Court sealed records and preliminary hearing transcript where actual innocence *may be evidenced*." Objs. at 1 (emphasis added and omitted). Petitioner does not provide an unequivocal affidavit from the eyewitness stating that she knows for a fact that Petitioner did not commit the crime. Even had Petitioner submitted such evidence and not mere supposition, it is not clear that, viewed with all the evidence of record, including
///

Petitioner's own guilty plea, a court could conclude that no juror would be able to find Petitioner guilty.

Likewise, to the extent that Petitioner's codefendant pleaded guilty, that fact does not entitle Petitioner to application of the actual innocence gateway. "[A]ctual innocence claims focus on 'new' evidence—*i.e.*, 'relevant evidence that was either excluded or unavailable at trial.'" *Chestang v. Sisto*, 522 F. App'x 389, 391 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327–28). Petitioner knew on the date of the crimes whether he or his codefendant committed the crimes in question; this is not "new" evidence. *See id.* At any rate, Petitioner's codefendant's guilty plea does not per se speak to Petitioner's innocence. Multiple persons can commit a crime together. Petitioner's codefendant's admission of guilt is thus unlike the affidavit supplied in *Garrett v. Grounds*, No. 2:11-CV-1778-CMK-P, 2014 WL 897110, at *2 (E.D. Cal. Mar. 6, 2014), where the court found the petitioner entitled to the actual innocence gateway in light of the petitioner's codefendant's sworn declaration that he alone committed the crime in question and the petitioner was uninvolved in the crime. In light of the evidence currently before this Court, it is not more likely than not that every juror would have had reasonable doubt about Petitioner's guilt in light of his codefendant's alleged guilt.

Accordingly, the Court finds that Petitioner fails to establish that the actual innocence gateway renders his Petition timely and **OVERRULES** Petitioner's objections to the contrary.

## II. Remainder of the R&R

Petitioner does not object to the remainder of Judge Berg's R&R, including, *inter alia*, the R&R's conclusions concerning when his state court judgment became final and that Petitioner has not shown entitlement to statutory tolling. *See* R&R at 7–11. Having found no clear error, the Court **ADOPTS** the remainder of the R&R.

///

///

///

**CERTIFICATE OF APPEALABILITY**

A state prisoner seeking to appeal a district court's denial of a habeas petition must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c). Rule 11 of the Rules Following 28 U.S.C. § 2254 requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. "Determining whether a COA should issue where the petition was dismissed on procedural grounds has two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding." *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.* "Because both of these components are necessary to obtain a certificate of appealability, the U.S. Supreme Court has encouraged district courts to address the procedural prong first." *Alatorre v. Figaroa,* No. 13-CV-1622 JLS MDD, 2014 WL 3908618, at *1 (S.D. Cal. Aug. 11, 2014) (citing *Slack,* 529 U.S. at 485; *Petrocelli v. Angelone,* 248 F.3d 877, 884 & n.6 (9th Cir. 2001)).

Here, the Court concludes that no jurist of reason would find it debatable whether the Court was correct in its procedural ruling that Petitioner's Petition is untimely. Accordingly, the Court **DENIES** a COA.

**CONCLUSION**

In light of the foregoing, the Court **OVERRULES** Petitioner's Objections (ECF No. 11), **ADOPTS** Judge Berg's R&R (ECF No. 10), and **GRANTS** Respondents' Motion to

Dismiss (ECF No. 5) **WITH PREJUDICE**.  Additionally, the Court **DENIES** a certificate of appealability.  As this Order concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated:  February 16, 2023

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge